

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

November 21, 2022

**BY ECF**

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Toby Murchison*, 22 Cr. 172 (VB)

Dear Judge Briccetti:

      The Government respectfully submits this letter in advance of the sentencing of Toby Murchison (the "defendant" or "Murchison"). Murchison pled guilty to an Information charging him with one count of conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1954(c). The applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 97 to 121 months' imprisonment. For the reasons explained below, a sentence within that Guidelines range would be sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

**I.   Background**

      In or about April 2021, Murchison conspired with one or more other people to recruit a sixteen-year-old victim ("Minor Victim-1") to engage in commercial sex acts in and around Newburgh, New York. PSR ¶ 8.[1] Murchison met Minor Victim-1, who had run away from home, in the Newburgh area. Murchison and a co-conspirator helped Minor Victim-1 to procure "dates" (*i.e.*, meetings with men to engage in commercial sex acts), and then secured hotel rooms, including in Newburgh and Fishkill, in which Minor Victim-1 would meet the men for "dates" and perform sex acts in exchange for money. *Id.* Minor Victim-1 then gave some or all of the proceeds from those commercial sex acts to Murchison. *Id.*

      According to Minor Victim-1, Murchison (whom Minor Victim-1 knew as "Fresh") set the rates for Minor Victim-1's commercial sex acts; the hotel rooms used for sex acts were procured, directly or indirectly, by Murchison; and Murchison would leave the hotel room when Minor Victim-1 was going to engage in a commercial sex act and return to collect the money. PSR ¶ 10. Minor Victim-1 also stated that she thought she was going to get beat up or killed if she did not perform commercial sex acts and give the money to Murchison. *Id.* Minor Victim-1 originally

---

[1] Citations to the "PSR" refer to the Pre-Sentence Investigation Report prepared by the United States Probation Office in connection with this case.

told Murchison she was 18 years old, but Murchison learned at some point that she was 16 years old, and Minor Victim-1 continued to engage in commercial sex acts thereafter. *Id.* Minor Victim-1 worked for "Fresh" for approximately one week. *Id.*

In or about May 2021, after Minor Victim-1 and Murchison had parted ways, Murchison attempted to recruit Minor Victim-1 to engage in commercial sex acts again—in his words, to return "home" to be on his "team." *See* PSR ¶ 10. For example, in messages exchanged over Facebook Messenger, Minor Victim-1 messaged Murchison, "Wats dat app called were u set up dates and shit", to which Murchison replied "Lol", "U buggin", "Its call yr way not working out." The next day, Murchison messaged Minor Victim-1, "Need u home yo," to which Minor Victim-1 responded in part "U don't need me u got dis," to which Murchison responded, "So you coming home and u right I don't need u but I want you on my team now." Murchison also messaged Minor Victim-1 that she needed "work," meaning to engage in commercial sex acts. A few days later, in messages exchanged between Minor Victim-1 and another Facebook account associated with Murchison, Minor Victim-1 messaged Murchison that she did not want to have to "put money in nobodys pocket but mine[]" and "[t]hat's why I left the family bro because all you did was buy shi[t] for yourself and never took care of me when I was with you …." Murchison later messaged Minor Victim-1, "Like I told u I think u to good for Newburgh and should be home and going to school so why u mad at me I'm not a pimp or nothing I just living my life."

In addition, in May 2021, Murchison facilitated the transportation of an adult victim ("Victim-2") from New York to Tennessee, and from Tennessee back to New York, with the intent that Victim-2 would engage in commercial sex acts in both New York and Tennessee, including by paying for Victim-2's flights and hotel rooms. PSR ¶ 11.

Murchison was charged in a three-count Complaint dated August 19, 2021, with sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a) and (b)(2), and 2; transportation for the propose of prostitution, in violation of 18 U.S.C. §§ 2422(a) and 2; and use of an interstate facility to promote unlawful activity, in violation of 18 U.S.C. §§ 1952(a)(3), and 2, in connection with the conduct identified above. Murchison was arrested on those charges on August 25, 2021, presented before the Honorable Paul E. Davison, United States Magistrate Judge, and detained.

On March 21, 2022, Murchison pled guilty pursuant to a plea agreement to an Information charging him with one count of conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1954(c).

## II. The Guidelines Calculation

The Probation Office calculates the applicable Guidelines range as follows:

Pursuant to U.S.S.G. § 2G1.3(a)(2), the base offense level is 30. PSR ¶ 18. Two points are added pursuant to U.S.S.G. § 2G1.3(b)(4), because the offense involved the commission of a sex act. PSR ¶ 19. The adjusted offense level is 32. PSR ¶ 23. A three-level decrease for acceptance of responsibility is warranted pursuant to U.S.S.G. § 3E1.1(b). PSR ¶¶ 25-26. Therefore, the total offense level is 29. PSR ¶ 27.

According to the PSR, the defendant has over a dozen prior adult convictions. However, because of the age and/or nature of the majority of those convictions, they result in only three

criminal history points, putting the defendant in criminal history category II. PSR ¶ 43. A total offense level of 29 and criminal history category II yields an advisory Guidelines range of 97 to 121 months' imprisonment.

The defense sentencing submission argues that the defendant's criminal history score is overstated because that calculation includes two state marijuana convictions that are theoretically eligible for expungement, but have not yet been expunged, and that accordingly the Court should grant a downward variance to criminal history category I. *See* Def. Mem. 3-4. The Government respectfully disagrees that a downward variance is warranted in this case. The defendant has more than a dozen adult convictions, including numerous drug offenses and offenses relating to prostitution. Granting a variance, and treating the defendant as if he is in criminal history category I, would fail to account fully for the defendant's long history of criminal conduct, which is already only minimally reflected in the defendant's criminal history score due to the age of many of the defendant's prior convictions. Indeed, the defendant has been in and out of the criminal justice system since he was a teenager. For those reasons, criminal history category II appropriately reflects the defendant's criminal history, and a variance is inappropriate.

### III. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;

>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV. A Guidelines Sentence Is Appropriate

A sentence within the applicable Guidelines range of 97 to 121 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

*First*, a Guidelines sentence would reflect the seriousness of the offense, promote respect for the law, and the provide just punishment for the offense. The seriousness of Murchison's offense conduct cannot be overstated. He conspired to traffic a sixteen-year-old girl for sex. At some point, if not initially, the defendant knew Minor Victim-1's age. He knew that she had run away from home; knew that she was vulnerable. The defendant took advantage of Minor Victim-1's vulnerability, and did so for his own financial gain. That conduct is reprehensible and likely to have a lasting impact on Minor Victim-1's life for years to come.

*Second*, a sentence within the applicable Guidelines ranges would account for the need to specifically deter Murchison himself, and to protect the public from future crimes. Murchison has over a dozen prior convictions, including prostitution-related offenses. Clearly, his prior brushes with the law have not deterred this defendant from engaging in criminal activity by profiting from the exploitation of some of society's most vulnerable victims. This Court should impose a Guidelines sentence on Murchison in the hopes that, this time, he will be deterred from reoffending yet again.

Further, a substantial term of imprisonment is necessary to protect the public. The defendant's conduct in this case is serious and presents a danger to the public. Not only that, but he also has a pattern of engaging in unlawful activity over the course of his entire adult life. As explained in the PSR, the defendant has had almost no legitimate employment history, relying instead on his criminal conduct and exploitation of others. PSR ¶ 68. Under those circumstances, the likelihood of recidivism is high. A Guidelines sentence will help to protect the public from the defendant during the time he is imprisoned.

*Lastly*, a Guidelines sentence is necessary to promote general deterrence. A substantial term of imprisonment in this case would send the message to who engage in conduct similar to that of Murchison—those who take advantage of vulnerable children for their own financial gain—that such conduct is met with serious consequences.

## V. Conclusion

For the reasons set forth above, the Court should impose a sentence within the Guidelines range of 97 to 121 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/ Stephanie Simon
Stephanie Simon
Assistant United States Attorney
Tel:  (914) 993-1920

cc:    Rachel Martin, Esq.